IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **MARK TECHNOLOGIES CORP.,**<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>**UTAH RESOURCES INTERNATIONAL, INC., et al.,**<br><br>　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No.  2:03CV831DAK |

　　　　　This matter is before the court on Defendants', Inter-Mountain Capital Corporation ("IMCC") and Utah Resources International  Inc. ("URI"), motion for summary judgment. Plaintiff Mark Technologies Corp. ("MTC") asserts three causes of action in its Complaint-- breach of contract, rescission, and specific performance–against URI and IMCC.  The court previously decided motions to dismiss in this case.  The court dismissed all of the individual members of URI's and IMCC's Boards of Directors.  However, the court did not dismiss MTC's beach of contract claim because it concluded that it had standing even though it was not a signatory to the Promissory Note based on the fact that it was a signatory to the Settlement Agreement and the Settlement Agreement incorporated the Stock Purchase Agreement, which in turn incorporated the Promissory Note.

　　　　　At the summary judgment stage, Defendants assert that there are additional facts that bear on MTC's ability to state a breach of contract claim.  In addition, Defendants make several

1

arguments for dismissal of the action as a matter of law.  MTC also filed a cross motion for summary judgment in response to Defendants' motion, alleging that the court can find a breach as a matter of law.  Defendants filed a motion to strike the cross motion for summary judgment on the grounds that the cross motion was filed after the dispositive motion deadline.

The court held a hearing on the motions on December 5, 2005.  At the hearing, Plaintiff was represented by Reid W. Lambert, and Defendants were represented by Craig M. White and Rebecca S. Parr.  The court took the motions under advisement.  The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

In April 1996, Fife and IMCC executed a Letter of Intent with three members of URI's then-Board of Directors to purchase a controlling number of URI shares.  Several parties then filed lawsuits against URI, which were collectively negotiated and settled.  MTC played a prominent role in the negotiations and settlement.

On June 26, 1996, eleven parties, including MTC, entered into a Settlement Agreement under which IMCC was permitted to purchase a controlling interest in URI.  As a part of the Settlement Agreement, URI and IMCC were negotiating a Stock Purchase Agreement, which was executed after the Settlement Agreement.  A draft Stock Purchase Agreement was attached as an exhibit to the Settlement Agreement and incorporated into the Settlement Agreement by reference.  URI and IMCC are the only parties to the Stock Purchase Agreement.  Paragraph 1.f of the Settlement Agreement states that "the transactions contemplated in the IMC Letter of

Intent shall close in accordance with the provisions of that contemplated Stock Purchase Agreement between URI and IMC ("the Stock Purchase Agreement"), the current form of which is appended hereto and incorporated herein by reference as Exhibit 'C,' subject to negotiation and execution of the definitive Stock Purchase Agreement and approval of its terms by the URI Board of Directors, provided, however, that the definitive Stock Purchase Agreement must contain the following material provisions. . ." The integration clause of the Settlement Agreement, in paragraph 11.d, also states that the exhibits to the Settlement Agreement are "incorporated herein."

  The final, executed copy of the Stock Purchase Agreement is dated July 3, 1996–seven days after the Settlement Agreement was executed. Under the Stock Purchase Agreement, IMCC was required to pay a significant sum for its controlling interest, with 15% of the purchase price paid at closing, and the remaining amount due and payable by August 1, 2001. Section 1.4 of the Stock Purchase Agreement, however, does not state how the principal and interest were to be paid. According to Section 1.4 of the final Stock Purchase Agreement, the form of the promissory note was attached as an exhibit. And, all exhibits were incorporated by reference into the Stock Purchase Agreement. Section 10.10 of the Stock Purchase Agreement also provides that "Any portion of this Agreement can be waived, supplemented or modified by a written agreement of the Purchaser [IMCC] and the Company [URI]."

  A final version of the Promissory Note referred to in Section 1.4 of the Stock Purchase Agreement was also entered into on July 3, 1996. The Promissory Note was in the amount of $3,633,159.42 and had a maturity date of August 1, 2001. The Promissory Note was only between URI and IMCC. The Purchase Agreement sets forth the terms of the Note and states

that by agreeing to the terms of the Purchase Agreement the parties agree to the terms of the Note. The Note was secured by a pledge of IMCC's URI stock.

In June of 2001, John Fife, on behalf of IMCC, approached the URI Board of Directors regarding re-financing the First Note with a second note in a lesser amount due to a cash paydown of the principal and more valuable collateral. The URI Board of Directors agreed that the First Note would be replaced with a new Second Note, more valuable collateral, a higher loan-to-value ratio, and a cash payment of $800,000 due on the original deadline of August 1, 2001. Although there is some conjecture from MTC on the propriety of the action taken, the only evidence before the court is that the URI Board of Directors is independent and the negotiations were done at arm's length. Also, John Fife abstained from the decision.

On August 1, 2001, the new promissory note was entered into between IMCC as the Borrower and URI as the holder. The Second Note was in the amount of $3,072,947.94. After the Second Note was entered into, all URI shareholders, including MTC, were notified of the terms by letter. MTC admits that it received a copy of the letter. The Second Note released Fife from his guaranty on the First Note, but required him to execute a guaranty for a bank loan to URI for $7,000,000, which he did. URI used the $7,000,000 to establish an investment program that was ultimately very successful.

On October 1, 2003, a Third Note was entered into between URI and IMCC. The Second Note was paid off partly with cash and partly with the new Third Note. The Third Note was in the amount of $1,219,561.99, and had a maturity date of August 1, 2005. On December 30, 2004, however, in advance of the August 1, 2005 maturity date, the Third Note was completely paid off with cash.

MTC brought this action alleging a breach of contract based on IMCC's failure to make the required payment to URI by August 1, 2001.  MTC also brings a claim for rescission of the Purchase Agreement and a claim for specific performance compelling IMCC and Fife to comply with the terms of the Settlement Agreement by paying URI all amounts due under the Purchase Agreement and Note.

## DISCUSSION

### Defendants' Motion for Summary Judgment and Plaintiff's Cross Motion

Although this court could not determine whether MTC suffered any damages at the motion to dismiss stage, Defendants assert that, at the summary judgment stage, MTC cannot pursue a claim relating to a breach of the promissory notes between URI and IMCC because MTC was not a party to any of the promissory notes and, even more significantly, there was no default on any of them.  MTC asserts that the Settlement Agreement outlines the terms of the transaction and provides that IMCC and URI would enter a stock purchase agreement requiring a 15 percent down payment, annual interest payments, and "the principal due and payable August 1, 2001."  MTC argues that its claim is for a breach of the terms of the Settlement Agreement. The Settlement Agreement states that IMCC would pay $3,633,159.42 on August 1, 2001. MTC contends that where the payment was a substantial part of the consideration the URI shareholders bargained for in exchange for their willingness to yield a majority interest and control of URI to IMCC, the failure to pay on the specified date was a material breach for which the parties to the Settlement Agreement should be entitled to a remedy.

Defendants argue that the definitive Stock Purchase Agreement, with its accompanying promissory note, could not have been incorporated in the Settlement Agreement because it did

5

not exist at the time. The only requirement under Utah law is that the reference to the document must be clear and unequivocal and must be called to the attention of the other party, that the party must consent thereto, and that the terms of the incorporated document must be known or easily available to the contracting parties. *Consolidated Realty Group v. Sizzling Platter Inc.*, 930 P.2d 268, 273 (Utah App. 1997). In this case, the requirements are met. The language of paragraph 1.f of the Settlement Agreement states: "The transactions contemplated in the IMC Letter of Intent shall close in accordance with the provisions of that contemplated Stock Purchase Agreement between URI and IMC (the "Stock Purchase Agreement"), the current form of which is attached hereto and incorporated herein by this reference as Exhibit "C," subject to negotiation and execution of the definitive Stock Purchase Agreement and approval of its terms by the URI Board of Directors." This reference is enough to incorporate the Stock Purchase Agreement and accompanying Promissory Note.

The most significant issue in this case is whether there was a breach of the Promissory Notes or a breach of the Settlement Agreement due to the re-financing of the promissory notes. MTC contends that URI and IMCC's re-negotiation of the payments terms of the Stock Purchase Agreement and Note without consent of the other settling parties violates the Settlement Agreement and that the failure to pay the amount due in August of 2001 completely in cash constitutes a breach of the Settlement Agreement. MTC asserts that a partial cash payment and a new note was not sufficient to discharge the obligation under the Settlement Agreement because nothing in the Settlement Agreement or Stock Purchase Agreement provide that payment shall mean anything other than payment in money. Whereas, Defendants contend that nothing in the First Note, the Stock Purchase Agreement, or the Settlement Agreement required that the First

Note be paid off completely with cash.  And, nothing in any of the documents prohibited a re-financing of the First Note.

The First Note provides that IMCC "does hereby promise to pay, in immediately available funds, on or before August 1, 2001 . . . the principal sum."  MTC contends that this language refers to payment by money rather than the delivery of a further promise to pay.  The First Note, however, explicitly provides that IMCC authorizes URI, "without giving notice and without affecting the liability of the undersigned, to extend the time, or assign, payment of this Note in whole or in part."   In addition, the law recognizes that a promissory note may be effectively paid by a subsequent promissory note, given that "negotiable promissory notes are equivalent to the payment of money."  *Hendrick v. Lindsay*, 93 U.S. 143, 149 (1876).  Under Utah law, "the giving of a new note in renewal of another note does not extinguish a debt for which an original note has been given unless it clearly appears that it is the intention of the parties that the execution of the new note and the cancellation of the old note should extinguish the debt represented by the old note."  *First Security Bank v. Proudfit Sporting Goods Co.*, 552 P.2d 123, 124 (Utah 1976).

In this case, the Second Note, on its face, evidences the parties' intention to extinguish the debt of the First Note.  Section 4.7 of the Second Note reads: "This Note replaces that certain Promissory Note dated July 3, 1996, in the original principal amount of $3,633,159.42 delivered by Borrower to Holder.  Upon deliver of this Note, the Original Note is cancelled and shall be so marked by the Holder."  Nearly identical language is included in the Third Note.  Therefore, under Utah law, the First Note was paid and extinguished by the Second Note and the Second Note was paid and extinguished by the Third Note.

MTC argues that the provisions of the Stock Purchase Agreement and the Promissory Note permitting modification do not excuse the failure to make full payment on August 1, 2001. MTC asserts that the proper construction of the various agreements does not permit modification of the material terms described in the Settlement Agreement without the written agreement of all of the parties thereto. Paragraph 11.j of the Settlement Agreement provides that the Agreement may not be modified except in a writing signed by all of the parties.

Defendants contend that a reasonable reading of the plain language of the provisions of the Settlement Agreement is that all of the settling parties simply agreed that the Stock Purchase Agreement would contain certain terms. The Settlement Agreement states that "the Stock Purchase Agreement must contain the following material provisions," and there is no dispute that the Stock Purchase Agreement did in fact contain all of the material requirements listed. Moreover, the Settlement Agreement attached the Stock Purchase Agreement allowing modification between URI and IMCC alone. Section 10.10 of the Stock Purchase Agreement provides that "[a]ny provision of the Agreement can be waived, amended, supplemented, or modified by a written agreement of Purchaser and the Company." And the Promissory Note includes language authorizing URI, "without affecting the liability of the undersigned, to extend the time of, or assign, payment of this Note in whole or in part."

MTC contends that the proper interpretation of the provisions in all three agreements is that they allow URI and IMCC to amend or alter the terms of the Stock Purchase Agreement and the Promissory Note, only so long as they do not vary the material terms described in the Settlement Agreement, including the payment terms at issue here. However, such a construction renders the plain language of the Promissory Note meaningless. "Each contract provision should

be considered in relation to all of the others, with a view toward giving effect to all and ignoring none." *Utah Valley bank v. Tanner*, 636 P.2d 1060, 1061-62 (Utah 1981).  Under these rules of contract construction, the court cannot moot the provision in the Promissory Note allowing the parties to the Note to "extend the time of . . . payment of this Note" in whole or in part.

     MTC incorrectly asserts that the Settlement Agreement spelled out how IMCC would obtain its interest in URI.  The Settlement Agreement does not mention the words "promissory note."  It is not the Settlement Agreement itself, but an exhibit to the Settlement Agreement, the Draft Stock Purchase Agreement, that explained the sale/purchase by URI and IMCC and the consideration required.  This document explicitly allows for modification, including with respect to the maturity date of the note.

     More significantly, when MTC signed the Settlement Agreement, it agreed that URI and IMCC had the ability to make future agreements between themselves because the Settlement Agreement incorporated a June 24, 1996 draft of the Stock Purchase Agreement containing a term that allowed URI and IMCC to make future modifications by themselves.  Because MTC accepted URI's and IMCC's ability to make future agreements between themselves when it executed the Settlement Agreement, it cannot now complain that URI's and IMCC's exercise of that ability is a breach of the Settlement Agreement.  The fact that URI and IMCC exercised that modification provision cannot form the basis of a claim for breach of the Settlement Agreement.

     The plain language of the Settlement Agreement, the Stock Purchase Agreement, and the First Note, all demonstrate that the modification or re-financing agreed to by URI and  IMCC was proper.  The court would have to read a term into the Settlement Agreement that would forbid URI and IMCC from agreeing to a modification of the First Note.  On its face, the

Settlement Agreement contains no such term. Nor is the Settlement Agreement ambiguous as to such a requirement. The question of whether an ambiguity exists in the contract is a question of law. *Winegar v. Froerer*, 813 P.2d 104, 108 (Utah 1991). The term that MTC wants to read into the Settlement Agreement is simply not there. It is a fundamental principle of contract law that reformation is not available to rewrite a contract to include terms never contemplated by the parties. *Chevron Oil Co. v. Barlow*, 406 F.2d 687, 692 (10th Cir. 1969) ("In the absence of fraud or mutual mistake the court will not re-write or supply missing terms for the parties and, in effect, substitute a reformed contract for them, thereby including something not present in the original.").

      The court concludes that nothing in the First Note, the Stock Purchase Agreement, or the Settlement Agreement required that the First Note be paid off completely with cash on August 1, 2001. And, nothing in any of the documents prohibited a re-financing of the First Note. In fact, the Stock Purchase Agreement specifically allows URI and IMCC to make modifications without approval from another party. The terms of the First Note were fully performed and there is no breach. The refinancing of the First Note amounts to full performance and extinguishment of the obligations that existed prior to the re-financing. Re-financing of a note is not a default of the note. Without a breach of the Note, MTC has no claim regardless of its status with respect to the Promissory Note. Moreover, the re-financing of the First Note also did not cause of breach of the Settlement Agreement because MTC, in signing that agreement, agreed that URI and IMCC could make future modifications. Because there is no term in the Settlement Agreement prohibiting URI and IMCC from modifying the First Note, MTC's claims for breach of contract, rescission, and specific performance fail as a matter of law. MTC's rescission claim cannot

stand because there is no breach of the Settlement Agreement and, given that each of the three notes was fully performed, MTC's third cause of action for specific performance of the First Note fails.[1]

### Defendants' Motion to Strike

Defendants move to strike MTC's cross motion as untimely because it was filed in connection with MTC's opposition to Defendants' motion for summary judgment, which was beyond the dispositive motion deadline. Whether or not it is proper under the rules to file such a cross motion, the court frequently sees it done. Moreover, because the parties had adequate time to fully brief all of the motions, the court finds no prejudice to Defendants as a result of the cross motion. Therefore, the court denies Defendants' motion to strike.

### CONCLUSION

Based on the above reasoning, Defendants IMCC and URI's Motion for Summary Judgment is GRANTED. Plaintiff MTC's cross motion for summary judgment is DENIED, and Defendants' Motion to Strike Plaintiff's Cross Motion is DENIED. Plaintiff's case is dismissed in its entirety, each part to bear its own costs.

DATED this 9th day of January, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge

---

[1] Because the court rules that a rescission claim cannot stand, it need not reach Defendants arguments regarding the timeliness of MTC's claims or laches.